INTERNATIONAL SECURITY LIFE IN-SURANCE COMPANY, Appellant,

v.

Marvin J. KENNEDY, Appellee.

No. 8060.

Court of Civil Appeals of Texas, Texarkana.

Dec. 14, 1971.

Rehearing Denied Jan. 11, 1972.

David F. Farris, Law Offices of A. J. Bryan, Fort Worth, for appellant.

John L. McCraw, Jr., McCraw & Vitz, McKinney, for appellee.

DAVIS, Justice.

Plaintiff-Appellee, Marvin J. Kennedy, sued Defendant-Appellant, International Security Life Insurance Company, to recover certain damages under a medical and hospitalization insurance policy. The case was tried before a jury. There were several agreed stipulations of fact which included Article 3.62 of the Insurance Code of the State of Texas, which provides for the payment of an attorney's fee in case of a recovery on the policy. It was stipulated that Appellee was diagnosed as having advanced pulmonary tuberculosis in November, 1969. Appellee was referred to Carman Sanatorium, Inc., of Dallas, Texas, or Baylor Hospital, Dallas, Texas, for further treatment. Appellee contacted Carman Sanatorium, Inc. In order to verify Appellee's insurance coverage, Dr. H. Frank Carman contacted appellant and inquired as to coverage under Appellee's insurance policy. It was stipulated that Appellee had incurred medical and hospital expenses in the amount of $1,733.45. It was further stipulated that an attorney's fee of $577.82 was reasonable in the case at bar. The insurance policy was offered in evidence. There was only one special issue submitted to the jury. The jury answered in favor of Appellee. Judgment was entered in favor of Appellee. Appellant has perfected its appeal and brings forward three points of error.

By the points of error, Appellant says the evidence is insufficient to support the jury's verdict that the Carman Sanatorium, Inc., was a legally constituted hospital at the time of Appellee's confinement; there was no evidence that Carman Sanatorium, Inc. had the supervision at all times of a licensed doctor of medicine or osteopathy; and, the evidence, as a matter of law, established that the Carman Sanatorium, Inc. was operated primarily as a convalescent home.

Part III of the insurance policy reads as follows:

"MEDICAL AND HOSPITAL BENEFITS

"The Company will pay indemnities for the usual and customary expenses

actually and necessarily incurred only while a person insured hereunder is confined as a bed patient to a Legally Constituted Hospital while this Policy is in force as a result of Accidental Bodily Injury or Sickness, in accordance with the terms, provisions, exclusions, limitations and reductions contained in this Policy.

"The term 'Legally Constituted Hospital' wherever used in this Policy means an institution licensed by law which has its own laboratory, X-ray equipment and an operating room where major surgical operations may be performed, and which maintains permanent and full-time facilities for the care of overnight resident patients under the supervision at all times of a licensed Doctor of Medicine (M.D.) or Osteopathy (D.O.) and a Graduate Registered Nurse, and which maintains complete and permanent records on the history of each patient. The term 'Legally Constituted Hospital' does not include institutions operated primarily or principally as rest homes, convalescent homes, clinics, maternity homes, nursing homes or homes for the care of the aged, regardless of the professional status of persons supervising them and regardless of whether or not such institution is licensed by the state or county in which it is located.

"The Company will pay expenses authorized by a legally qualified Doctor of Medicine (M.D.) or Osteopathy (D. O.) for hospital board and room and other miscellaneous hospital expenses, including drugs and medicines and the use of X-ray equipment for diagnosis or treatment; operating room and anesthetic charges; the regular amount of customary charges for the services of Doctors of Medicine (M.D.) or Osteopathy (D.O.) including charges for surgical procedures; and the services of professional nurses, other than members of the family of the Insured, who are Registered Nurses not employed by the Legally Constituted Hospital in which the Insured is confined, provided such nursing services are authorized and directed by a licensed Doctor of Medicine (M.D.) or Osteopathy (D.O.).

"The maximum amount payable on account of any one Accidental Bodily Injury or Sickness shall not exceed the Aggregate Amount Payable set out in the SCHEDULE.

"Only those amounts of aggregate expenses on account of any one Accidental Bodily Injury or Sickness which are in excess of the Deductible Amount set out in the SCHEDULE shall be payable under the terms of this Policy.

"*Periods of hospital confinement as a result of the same Accidental Bodily Injury or Sickness will be considered as one period of confinement.*" (Emp. added).

In the latest dictionary we find the definition of sanatorium to read as follows:

"Sanatorium: 1. A hospital for the treatment of chronic diseases as tuberculosis or various nervous or mental disorders. 2. Sanitorium. Syn. See Hospital."

A hospital is defined in the dictionary as follows:

"Hospital: 1. An institution in which sick or injured persons are given medical or surgical treatment . . . . Syn. 1. Retreat, clinic, hospital, asylum, sanatorium, sanitorium are names of institutions for persons needing some sort of care. A hospital is an institution in which sick or injured persons are given medical, or *surgical*, treatment, therapy, etc., . . . . " (Emp. added)

Dr. H. Frank Carman was called as a witness to testify in the case. Appellant stipulated as to the doctor's qualifications. Dr. Carman testified that he had been practicing medicine for about 44 years and in Dallas, Texas, since 1928. He testified that the Carman Sanatorium, Inc. had been

licensed by the City of Dallas, the County of Dallas, and the State of Texas for about 30 years. He testified that they had a certificate from the State and American Hospital Association that they received at a meeting in Houston, Texas, for 25 years of membership in this organization. He testified that the sanatorium had 25 beds. That a sanatorium is any institution given to treat specific diseases. He testified that Carman Sanatorium, Inc. treats the specific disease of medical or pulmonary tuberculosis. In addition to his duties at Carman Sanatorium, Inc. he testified that he was also a senior attending staff officer of the Baylor University Medical Center; associate attending staff of the Medical Arts Hospital; on the medical faculty of the Southwestern University of Medicine at the rank of Associate Professor. He testified that the Carman Sanatorium, Inc. had an operating room for doing major surgery. That it was equipped with an operating table, oxygen, and ventilation therapy. That they could do anything that was needed to be done in the institution, like pneumonoperitoneum of the thorax; those are the tissues which are removing fluid from the lungs. That they could do most anything that was needed to be done. He testified most positively that major operations could be performed at the facility. He testified that the facility was equipped with X-ray equipment, a fluoroscope machine, but he did most of the X-rays at his office. That his office was at. Medical Arts Building. He testified that laboratory facilities were available at the sanatorium and they did some lab work there. He testified that he was a medical director of the sanatorium and was on call 24 hours a day. There were medical consultants at the sanatorium that were always available when Dr. Carman was out of town. There were from two to four licensed nurses on duty at all times, depending on how many they needed. He testified that they kept a permanent record of all the patients that were treated at the sanatorium. He testified that Appellee had mass tuberculosis and was in bad need of hospitalization.

The only evidence that was offered by appellant that the sanatorium was not a hospital as defined in the insurance policy was by a woman who testified that she had a book from the American Hospital Association which gives the qualifications of each hospital in the State of Texas. She testified that she examined the book, found that the sanatorium did not conform to the hospital as defined in the insurance policy and denied the claim. The appellant offered another witness whose testimony may be summarized as follows:

"Question: So you felt pretty well at that time that it did not meet your qualifications?

"Answer: I don't know what I felt at that time, I assume I did."

There is no positive evidence from this witness who was an employee of the insurance company that denied the claim.

The only special issue that was submitted to the jury and their answer thereto reads as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that at the time plaintiff was confined in the Carman Sanitorium, Inc., the Carmen Sanitorium, Inc. was a 'Legally Constituted Hospital,' as that term is defined in the insurance policy?

Answer 'Yes' or 'No.'

Yes."

Immediately following the Special Issue, the trial court described a legally constituted hospital as set out in the insurance policy.

We hold that the evidence is fully sufficient to prove that Carman Sanatorium, Inc. in Dallas, Texas, was a "Legally Constituted Hospital" as that term is defined in the insurance policy. International Security Life Insurance Company v. Howard (Tex.Civ.App. 1970), 456 S.W.2d 765, wr. ref'd, n.r.e.; McKinney v. American Secu-

rity Life Insurance Company (La.App. 1954), 76 So.2d 630; Meyers v. Aetna Life Insurance Company (1966), 207 Pa.Super. 526, 218 A.2d 851. The points of error are overruled.

The judgment of the trial court is affirmed.